1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  THOMAS RIX, an individual, on behalf of himself, and on behalf of all persons similarly situated, | CASE NO. 09-CV-2063 MMA (NLS) |
| 12 | **ORDER:** |
| 13                                         Plaintiff, | **(1) DENYING MOTION TO CERTIFY CLASS ACTION;** |
| 14  vs. | (Doc. No. 42) |
| 15 | |
| 16  LOCKHEED MARTIN CORPORATION, a Maryland Corporation, and Does 1 to 10, | **(2) DENYING AS MOOT MOTION TO STRIKE THE EXPERT REPORT OF MILES E. LOCKER** |
| 17                                         Defendants. | (Doc. No. 43) |
| 18 | |

19

20         Currently before the Court in the above-captioned matter are Plaintiff Thomas Rix's

21  motion seeking certification of this case as a class action (Doc. No. 42); and Defendant Lockheed

22  Martin Corporation's motion to strike the expert report of Miles E. Locker submitted in support of

23  the motion for class certification (Doc. No. 43).  Both matters were fully briefed, and the Court

24  heard oral argument on February 7, 2011.  For the reasons set forth below, the Court **DENIES**

25  Plaintiff's motion for class certification, and **DENIES AS MOOT** Defendant's motion to strike

26  Locker's report.

27

28  / / /

## FACTUAL BACKGROUND

Plaintiff Thomas Rix ("Plaintiff") was employed by Defendant Lockheed Martin Corporation ("Defendant" or "Lockheed") in California as an Industrial Security Representative from June 2004 to August 2009.  Defendant is the largest defense contractor in the United States.  Defendant is a "global security and technology company that . . . is principally engaged in the research, design, development, manufacture, integration and sustainment of advanced technology systems products and services."  (Doc. No. 21 at 2.)

Plaintiff alleges Defendant represented that two of its employment positions, the Industry Security Representative, and Industry Security Representative, Senior (collectively, "ISR") are exempt and full-time positions.  Plaintiff brings this putative class action, claiming Defendant "unlawfully, unfairly and/or deceptively classified every ISR as exempt based on job title alone, failed to pay the required overtime compensation and otherwise failed to comply with all applicable labor laws with respect to these [ISRs]." (Id. at 4.)

On February 3, 2010, Plaintiff filed the operative First Amended Complaint. (Doc. No. 21.) Plaintiff alleges six causes of action: (1) Unfair business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.; (2) Failure to pay overtime compensation under Cal. Lab. Code §§ 510, 515.5, 551, 552, 1194 and 1198; (3) Failure to provide meal and rest periods under Cal. Lab. Code §§ 226.7 and 512; (4) Failure to provide accurate itemized statements under Cal. Lab. Code § 226; (5) Violation of Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*.; and (6) Labor Code Private Attorney General Act § 2698.  Plaintiff brings claims one through four on behalf of himself and the California Class (similarly situated individuals who are, or previously were, employed by Defendant as an ISR in California during four years prior to filing the complaint); claim five on behalf of himself and the Collective Class (those in the California class who were employed during three years prior to filing complaint); and claim six on behalf of himself only.

On November 15, 2010, Plaintiff filed the instant Motion for Class Certification of claims one through four (Doc. No. 42), and seeks to define the class as:

> Those individuals employed by Defendant Lockheed Martin Corporation ("Lockheed") who were classified as exempt and worked in a position with the title 'Industrial Security Representative' or 'Industrial Security Representative, Senior' during the period September 21, 2005 to the present (the 'Class Period').

Defendant vigorously opposes the motion, arguing that the purported class does not meet the requirements of Federal Rule of Civil Procedure 23. Defendant also objected to evidence Plaintiff offered in support of his motion (Doc. Nos. 44, 45), and moved to strike the Expert Report of Miles E. Locker submitted in support of Plaintiff's motion to certify (Doc. No. 43).

**DISCUSSION**

**A.      Expert Report of Miles E. Locker**

Defendant moves under Federal Rule of Evidence 702 to strike the expert report of Miles Locker, an attorney who formerly served as chief counsel for the Department of Labor Standards Enforcement. Defendant argues the report consists of legal argument akin to a supplemental brief, it is not sufficiently probative to be useful in evaluating whether class certification requirements have been met, and it lacks foundation and requisite expert qualifications.

Plaintiff responds that Locker's report is useful because his opinions establish how Plaintiff's theory and exemption analysis can be proven on a class-wide basis. Plaintiff further argues that Defendant's attack on Locker's report goes to the weight, and not the admissibility, of his opinions. Plaintiff contends Locker's opinions on labor and employment compliance are analogous to building code compliance expert testimony in construction cases, and courts routinely accept expert opinions concerning building code violations.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise . . . ." FED. R. EVID. 702. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. . . ." Advisory Committee's Note, FED. R. EVID. 702. The Ninth Circuit has not expressly addressed the evidentiary standard at the class certification stage where a party challenges expert testimony under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, but has stated, "We are not convinced . . . that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony relevant at trial. . . . As a general rule, [d]istrict courts are not required to hold a *Daubert* hearing before ruling on the admissibility of scientific

- 3 -

1  evidence." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 602 n.22 (9th Cir. 2010).

2       Locker's report did not assist the Court with its analysis in determining whether the

3  proposed class should be certified.  Nonetheless, the Court defers ruling on Locker's report under

4  Federal Rule of Evidence 702 for purposes beyond class certification.  The Court finds it

5  premature to issue a final ruling as to Locker's testimony, as it remains to be seen what use

6  Plaintiff will make of this evidence going forward.

7       Accordingly, the Court **DENIES AS MOOT** Defendant's motion to strike the expert

8  report of Miles Locker.

9  **B.       Defendant's Objections to Evidence**

10       Defendant submitted evidentiary objections to Plaintiff's putative class member

11 declarations that were offered as evidence in support of his motion for class certification.  (Doc.

12 No. 44-1.)  The Court stated its evidentiary rulings on the record at the motion hearing, and

13 **AFFIRMS** its rulings as follows: Defendant's objections Numbers One through Five are

14 overruled.  Objection Number Six is sustained on grounds that "NISPON is the bible, it governs

15 everything" is argumentative.  (Doc. No. 44-1, citing Weston Decl. ¶ 5.)  "A declaration should

16 not be argument."  *McCoy v. Southwest Airlines Co., Inc.*, 208 F.R.D. 617, 618 n.1 (C.D. Cal.

17 2002).  The Court declines to address Defendant's second set of objections because legal

18 memoranda are not evidence.  *See Flaherty v. Warehousemen, Garage & Serv. Station Employees'*

19 *Local Union No. 334,* 574 F.2d 484, 486 n.2 (9th Cir. 1978).

20 **C.       Rule 23 and Class Certification**

21       A district court may certify a class only if:

22       (1) the class is so numerous that joinder of all members is impracticable; (2) there are
         questions of law or fact common to the class; (3) the claims or defenses of the
23       representative parties are typical of the claims or defenses of the class; and (4) the
         representative parties will fairly and adequately protect the interests of the class.
24

25 *Dukes*, 603 F.3d at 580, *citing* FED. R. CIV. P. 23(a).

26 In addition to the requirements of Rule 23(a), a district court must also find at least one of the

27 following three conditions is satisfied:

28

1   (1) the prosecution of separate actions would create a risk of: (a) inconsistent or
    varying adjudications, or (b) individual adjudications dispositive of the interests of
2   other members not a party to those adjudications; (2) the party opposing the class has
    acted or refused to act on grounds generally applicable to the class; or (3) questions of
3   law or fact common to the members of the class predominate over any questions
    affecting only individual members, and a class action is superior to other available
4   methods for the fair and efficient adjudication of the controversy.

5   *Id., citing* FED. R. CIV. P. 23(b).

6       "The party seeking certification bears the burden of showing that each of the four

7   requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met." *Id.*,

8   *citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273

9   F.3d 1266 (9th Cir. 2001).  Here, the primary focus of the parties' dispute centers on whether

10  Plaintiff can satisfy the Rule 23(b) requirement, specifically, whether Plaintiff can show that

11  common issues of fact predominate over individual issues.  Because this issue is dispositive, the

12  discussion below is limited to this issue.

13  **D.      Rule 23(b)(3)**

14          1.      Parties' Contentions

15      Plaintiff contends Defendant uniformly misclassified ISRs as exempt under California law

16  from receiving overtime wages, meal and rest breaks, and itemized wage statements.  Plaintiff

17  primarily argues that due to the nature of work ISRs perform, all ISRs should be characterized as

18  public safety employees, which do not qualify as exempt under the administrative exemption.

19  Additionally, Plaintiff argues all ISRs perform the same primary tasks of investigating, detecting,

20  and preventing breaches of security protocol.  Defendant primarily contends ISRs should not be

21  certified as a class because individual issues will predominate in the determination of each ISR's

22  exempt status under the administrative exemption.

23          2.      California Labor Code and California Administrative Exemption

24      The claims Plaintiff seeks to certify all arise under California law.  Thus, the following

25  provisions are relevant. Under California law, "any work in excess of eight hours in one workday,

26  and any work in excess of 40 hours in one workweek . . . shall be compensated at the rate of no

27  less than one and one-half times the regular rate of pay."  Cal. Lab. Code § 510.  This requirement

28  to pay overtime compensation does not apply to "exempt" employees. *See* Cal. Lab. Code § 515;

Cal. Code. Regs. Tit. 8 § 11040.  The California Labor Code provides that the Industrial Welfare

Commission may "establish exemptions from the requirement that an overtime rate of

compensation be paid . . . ."  Cal. Lab. Code § 515(a).  The Industrial Welfare Commission

established an administrative exemption, set forth in Wage Order 4-2001.  The Wage Order

contains the requirements for determining whether an employee meets the administrative

exemption.  *See* Cal. Code. Regs. Tit. 8 § 11040(A)(2).  An administrative employee is someone:

> (a) Whose duties and responsibilities involve the performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers; and

> (b) Who customarily and regularly exercises discretion and independent judgment; and

> (c) Who regularly and directly assists a proprietor, or an employee involved in a bona fide executive or administrative capacity; or

> (d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge; or

> (e) Who executes under only general supervision special assignments and tasks; and

> (f) Who is primarily engaged in duties that meet the test of the exemption; and

> (g) Such employee must also earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.

Cal. Code. Regs. Tit. 8 § 11040(A)(2).

### 3.    Rule 23(b)(3) Predominance Inquiry

Predominance "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The

standard is  "far more demanding" than the commonality requirement of Rule 23(a).  *Id.*  The

inquiry requires a district court to formulate "some prediction as to how specific issues will play

out in order to determine whether common or individual issues predominate in a given case."

*Dukes*, 603 F.3d at 593 (internal quotation marks and citation omitted).

The "predominance test" under Federal Rule of Civil Procedure 23(b)(3) is a determination

"which may require review of the same facts and the same law presented by review of the merits."

*Dukes*, 603 F.3d at 589.  Therefore, "a preliminary inquiry into the merits is sometimes necessary

to make a meaningful determination of class certification issues. At the same time, the court is

required to take the allegations of the plaintiff's complaint as true. Plaintiff bears the burden of showing that the elements of Rule 23 are met." *Id.* at 588 (citations omitted).  However, a district court is not required to "unquestioningly accept a plaintiff's arguments as to the necessary Rule 23 determinations." *Id.* at 589.  "[T]he common questions cannot simply arise from artful pleading. Plaintiffs must raise questions that the district court concludes, after a rigorous analysis, are susceptible to common resolution at a later stage." *Id.*

        4.   <u>Discussion</u>

        a.   *Plaintiff's Public Safety Employee Theory*

Plaintiff's theory of the case is that all ISRs conduct primary duties that meet the definition of public safety employees, and public safety employees do not qualify as exempt under the administrative exemption.  (Pl.'s Mem. P.&A., p.11.)  Under Plaintiff's proffered approach, the Court should certify the class based on his theory that all ISRs are public safety employees, and then determine "once and for all times" on a class-wide basis whether ISRs were misclassified as exempt.  Plaintiff contends that if this Court does not accept his theory, the Court will have prejudged his case in contravention of the Ninth Circuit's decision in *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Internat'l Union v. Conoccophillips Co.*, 593 F.3d 802 (9th Cir. 2010).  The Court has considered Plaintiff's theory of the case, and although his theory raises a common question, it does not predominate over the need to conduct individual inquiries.

Plaintiff avers this Court can certify the class because his theory is susceptible to common proof under the exemption analysis approach used in *Reich v. State of New York*, 3 F.3d 581 (2d Cir. 1993), overruled by implication on other grounds by *Seminole Tribe v. Florida,* 517 U.S. 44 (1996)*.*  The Court disagrees.

In *Reich v. State of New York*, the defendant appealed from two district court orders entered in procedurally separate, but substantively similar, actions brought under the FLSA.  *Reich*, 3 F.3d at 585.  The issue before the district court upon the parties' motions for summary judgment was whether state police investigators qualified under an administrative exemption to the FLSA.  The district court noted it was undisputed that the investigators' primary duties were to conduct

criminal investigations, and after relying upon an administrative/production dichotomy analysis, concluded that state police investigators did not qualify as exempt employees.  The Second Circuit affirmed the district court's method of analysis, and agreed that state police investigators' primary duties fell squarely on the "production" rather than "administrative" side of the line, and therefore do not qualify for the administrative exemption.[1]

The administrative/production dichotomy approach may be utilized to:

> distinguish[] administrative employees - who are usually described as employees performing work directly related to management policies or general business operations of his employer or his employer's customers - from production employees - who have been described as those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce.

*Heffelfinger v. Electronic Data Systems Corp.*, 580 F. Supp. 2d 933, 957 (C.D. Cal. 2008) (internal marks and citations omitted).

*Reich* is readily distinguishable from the present case.  In *Reich*, the court was able to determine state police investigators' exempt status as a group because it remained undisputed that the "primary function" of the state police investigators was to "conduct - or 'produce' - its criminal investigations."  *Reich*, 3 F.3d at 587.  Because the primary function was undisputed, the court could assess the primary activities of the investigators as a group, and apply the dichotomy in making its exemption determination.

Here, Defendant disputes Plaintiff's argument that all ISRs conduct similar primary duties.  Defendant argues Plaintiff's alleged primary duties "sheds no light on the duties each ISR actually performed, how he or she was supervised, or the significance of decisions or recommendations each ISR made in the exercise of his or her duties."  (Def.'s Mem. P.&A., p. 14.)  Dissimilar from *Reich*, Defendant contends individual inquiries need to be conducted to determine the tasks ISRs actually perform.  This dispute over the primary duties prevents the Court from concluding Plaintiff's question is susceptible to common proof under its predominance inquiry.  Plaintiff's

---

[1] The *Reich* analysis determined employees' exempt status based on exemptions using an administrative/production dichotomy based on federal law.  Here, although Plaintiffs' claims are state law claims, California law has adopted some of the federal exemption provisions, and also employs an administrative/production dichotomy analysis modeled on the federal regulations.  *See e.g., Bell v. Farmers Ins. Exchange*, 87 Cal. App. 4th 805, 819 (2001).

1  theory assumes that in practice, all ISRs engage in the same primary duty.  Thus, his theory

2  assumes that when this case reaches summary judgment or trial, the Court will only need to utilize

3  the administrative/production dichotomy to make the exemption determinations of ISR employees.

4  Such a conclusion is not warranted by the current record in this case.

5       Plaintiff further contends his theory that ISRs are public safety employees is supported by a

6  federal regulation that addresses the application of overtime exemptions to public safety

7  employees.  (Pl.'s Mem. P.&A. pp. 5-7, *citing* 29 C.F.R. § 541(b)(3).)  Although the federal

8  regulation may be applicable to a claim under federal law, the claims at issue here are for alleged

9  violations of state laws.  California law has not adopted the regulation provision Plaintiff relies

10 upon.  *See* Cal. Code Regs., tit. 8 § 11040(A)(2).

11      Also, Plaintiff argues his theory is supported by an opinion letter issued by the U.S.

12 Department of Labor, which concluded that activities performed by investigators are more akin to

13 production, rather than administrative work.  (Bhowmik Decl., Pl.'s Exh. 1.)  He contends ISRs

14 perform duties similar to the work described in the opinion letter.  The Court makes no

15 determination at this time whether the regulation and Department of Labor letter ultimately

16 support Plaintiff's contention that ISRs are public safety employees.  The Court does conclude,

17 however, that such information does not help in determining whether this question is susceptible to

18 common resolution because it sheds no light on the types of duties ISRs actually perform.

19      Finally, the Court is not "prejudging" Plaintiff's theory by ultimately concluding that his

20 theory does not satisfy the predominance inquiry.  In *United Steel Workers v. ConocoPhillips Co.*,

21 the Ninth Circuit held that a district court erred when it failed to consider whether the plaintiff's

22 legal theory "was one in which common issues of law and or fact did not predominate." 593 F.3d

23 802, 808-09 (9th Cir.2010).  As shown above, the Court has carefully considered Plaintiff's theory,

24 and determined that while it presents a common question, it does not satisfy the Rule 23(b)(3)

25 predominance requirement.  The Court is not required to "unquestioningly accept [Plaintiff's]

26 arguments as to the necessary Rule 23 determinations."  *Dukes*, 603 F.3d at 589.  "[T]he common

27 questions cannot simply arise from artful pleading.  Plaintiff[] must raise questions that the district

28 court concludes, after a rigorous analysis, are susceptible to common resolution at a later stage."

1   *Id.* Accordingly, the Court proceeds with its predominance inquiry.

2            b.      *Factors for Rule 23(b)(3) Consideration in a Misclassification Action*

3       An employer's exemption policy is a permissible factor to consider under Rule 23(b)(3)

4   because the policy "suggests that the employer believes some degree of homogeneity exists among

5   the employees" and because "uniform corporate policies will often bear heavily on questions of

6   predominance and superiority." *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571

7   F. 3d 953, 957-58 (9th Cir. 2009). The Ninth Circuit cautioned, however, that a district court

8   should not rely on a "uniform exemption policy to the near exclusion of other factors relevant to

9   the predominance inquiry," as such reliance is insufficient to meet the predominance requirement

10   of Rule 23(b)(3). *Id.* at 959.

11       In *Vinole v. Countrywide Home Loans*, Inc., the Ninth Circuit provided guidance as to

12   additional factors a district court should consider when conducting its Rule 23(b)(3) certification

13   analysis in a misclassification action. 571 F.3d 935 (9th Cir. 2009). In determining whether

14   common issues predominate or whether there is a greater need for individualized inquiry, a

15   "district court must consider 'all factors that militate in favor of, or against, class certification,'

16   and the overarching focus remains on 'whether trial by class representation would further the goals

17   of efficiency and judicial economy.'" *Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 503-04

18   (N.D. Cal. 2010), *quoting Vinole*, 571 F.3d at 946-47.

19       Factors that may be susceptible to common proof include "whether the employer exercised

20   some level of centralized control in the form of . . . standardized corporate policies and procedures

21   governing employees, [and] uniform training programs . . . ." *Id.* Other types of proof that tend to

22   diminish the need for individualized inquiry may include "the existence of company-wide policies

23   governing how employees spend their time, or [] uniformity in work duties and experiences." *Id.*

24   In contrast, in cases where "exempt status depends upon an individualized determination of an

25   employee's work, and where plaintiffs allege no standard policy governing how employees spend

26   their time, common issues of law and fact may not predominate." *Id.*

27       Here, Plaintiff alleges Defendant instituted a policy that uniformly classified ISRs as

28   exempt. (FAC ¶ 9.) Based on the record, Defendant appears to have classified ISRs as exempt on

1   a group-wide basis as part of a job code project.  (Young Depo., Exh. 6: 77-19, 79-25.)  The Court

2   takes into consideration the uniform exemption policy as one factor that may bear heavily on the

3   question of predominance, but does not do so to the "near exclusion of consideration of other

4   factors."  *Id.* at 959.

5        Plaintiff argues ISRs all perform the same "primary tasks" of "investigating, preventing,

6   and detecting breaches of security protocols and procedures," and that these job duties are defined

7   by corporate procedures and policies.  (Pl.'s Mem. P.&A. at 12.)  In support, Plaintiff refers to the

8   National Industrial Security Program Operating Manual, which governs all ISRs and contains

9   "basic" or "general" guidelines related to "everything regarding security."  (Pl.'s Mem. P.&A. at

10  13, *citing* Shobert Depo., Exh. 3, 39:16-42:24.)  Additionally, Plaintiff contends that all ISRs

11  undergo the same "mandatory" training programs.  (Id.)  Defendant asserts the manuals and

12  training programs only provide minimal guidelines, and that such evidence does not mitigate the

13  need to conduct individual inquiries as to each ISR's exempt status.

14       "[W]hen an employer asserts an exemption as a defense . . . the resolution of which

15  depends on how employees spend their time at work, unless plaintiff proposes some form of

16  common proof, such as a standard policy governing how and where employees perform their jobs,

17  common issues of law or fact are unlikely to predominate." *In re Wells Fargo Home Mortg.*

18  *Overtime Pay Litig.*, 268 F.R.D. 604, 611 (N.D. Cal.2010) ("Wells Fargo II" ).  Here, Defendant

19  asserts the administrative exemption as a defense, and contends that individual inquiries will need

20  to be conducted to determine whether an ISR meets the exemption.  Defendant puts forth evidence

21  indicating that the manual and alleged uniform training program Plaintiff relies upon only provide

22  minimal guidelines, and are not policies that provide insight as to how each ISR actually spends

23  his or her time.

24       For example, Defendant's witness declarations state how employees develop and

25  implement procedures that are additional to the manual guidelines, and that such additional

26  procedures are incorporated depending on the particular project at issue and the requirements that

27  must be met for the particular project. (Riggs Decl. ¶ 6*).*  Also, Defendant's witness declarations

28  put forth evidence that, contrary to Plaintiff's contention, ISRs are not required to undergo

mandatory standardized training.  (*See e.g.*, Def.'s Ex. 5, Stephens Decl. ¶ 3; Ex 3, Nye Decl. ¶ 6).

Therefore, despite the existence of such manuals and programs, Plaintiff's proffered types of proof

do not diminish the Court's need to conduct individualized inquiries as to what types of duties

each ISR performs in his or her working day.

In addition, Defendant has presented evidence, in the form of declarations from various

Lockheed Martin employees, demonstrating that ISR duties are far from uniform.  The

declarations indicate that ISR duties vary depending upon the particular ISR's assignment, and the

size, type, and phase of program they support.  For example, an ISR who is assigned to work for a

computer security program has duties that greatly differ from an ISR who is assigned to work for a

physical security program.  (*Compare*, Albin Decl. ¶ 4, *with* Riggs Decl. ¶¶ 5-7).  An ISR in

computer security may conduct tasks such as developing guidelines regarding uploads/downloads,

guidelines regarding access to computer equipment, perform threat testing to monitor the security

of the network, and so on.  In contrast, an ISR in physical security engages in duties such as

designing and planning physical workspaces where engineers can work on classified projects,

inspecting workspaces to verify compliance with security protocols, and supervising contractors

that perform manual work to remedy potential physical security issues.  (Id.)  In light of the record

showing such varying ISR duties, a greater need for individualized inquiry exists.  The

overarching goals of judicial economy will not be served by certifying a class in this instance.

Plaintiff contends that "the detail of this security work raises distinctions without a

difference in deciding Plaintiff's predominant common questions."  (Pl.'s Reply at 7.)  The Court

disagrees.  It is precisely the ISR's "detail" work that creates issues which require individual

inquiries.  For the aforementioned reasons, the Court concludes that because individual inquiries

will predominate over common questions, Plaintiff cannot meet the predominance requirement of

Rule 23(b)(3).  Accordingly, Plaintiff's motion for class certification is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 14, 2011

Hon. Michael M. Anello
United States District Judge